Lisbeth B. Merrill, CB# 201822
**INTELINK LAW GROUP, PC**
23 Corporate Plaza Dr., Suite 150
Newport Beach, California 92660
Telephone: (949) 401-7220
Facsimile: (949) 800-6006
lmerrill@intelinklaw.com

Michael B. Marion (*pro hac vice forthcomming*)
**INTELINK LAW GROUP, PC**
2375 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016
Telephone: (866) 786-4036
mmarion@intelinklaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Guangzhou Haoshi Trading Co., Ltd., a Chinese corporation,<br><br>Plaintiff,<br><br>v.<br><br>Dbest Products, Inc., a California Corporation; Richard Elden and Unknown Elden, a married couple,<br><br>Defendants. | Case No.   2:23-cv-7487<br><br>**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND TORTIOUS INTERFERENCE**<br><br>**DEMAND FOR JURY TRIAL** |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND TORTIOUS INTERFERENCE**

Plaintiff Guangzhou Haoshi Trading Co., Ltd (hereinafter "Plaintiff"), brings this case against Defendant Dbest Products, Inc. (hereinafter "Dbest"), Richard Elden and Unknown Elden (hereinafter collectively "Defendants") and, by their attorney alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment of non-infringement and tortious interference based on Defendants' malicious and inequitable conduct and fraud, as set forth herein.

**PARTIES**

2. Plaintiff is a Chinese company with a principal place of business in Guangzhou City, China.

3. Dbest is a California corporation having a principal place of business located at 16506 S. Avalon Blvd., Carson, California 90746.

4. On information and belief, Richard Elden is an individual with an address at 16506 S. Avalon Blvd., Carson, California 90746.

5. Richard Elden is the Chief Executive Office, Chief Financial Officer, Secretary, and an officer of Dbest.

6. On information and belief, Richard Elden is married to Unknown Elden.

7. Defendant Richard Elden is an agent, officer, manager, principal, and/or alter-ego of Dbest and was at all times acting within the scope of such agency, affiliation, and/or alter-ego relationship; and actively participated in or subsequently ratified and/or adopted each of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 2201 and 2202, because the action concerns a federal question arising under the patent laws of the United States, including 35 U.S.C. § 271.

9. This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1332 as the action is between subjects of a foreign state and citizens of a State and the matter in controversy exceeds the sum or value of $75,000. This Court also has supplemental jurisdiction over related claims under 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over the Defendants because Defendants reside in this District, have a regular and established place of business in this District, and have committed acts of tortious interference in this District.

11. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendants have a regular and established place of business in this District and have committed acts of tortious interference in this District.

**STATEMENT OF FACTS**

12. Plaintiff is in the business of selling commercial goods throughout the United States, including this District. Plaintiff makes its sales through its Amazon.com storefront. The product at issue in this matter is Plaintiff's shopping cart sold under ASIN (Amazon Standard Identification Number) No. B0BLC15VGK (the "Haoshi Cart").

13. Photographs of the Haoshi Cart in its unfolded state are attached hereto as **Exhibit A**.

14. Photographs of the Haoshi Cart in its folded state are attached hereto as **Exhibit B**.

15. A video demonstrating the folding and unfolding of the Haoshi Cart is attached hereto as **Exhibit C**.

16. Dbest also distributes and sells personal shopping carts, throughout the United States, including in this District, in direct competition with Plaintiff on Amazon.com. Defendants' sales are also made through the Amazon.com storefront.

17. On or about March 22, 2023, Defendants caused a Policy Warning (the "Policy Warning") to be filed via Amazon's selling platform based on purported infringement of U.S. Patent No. 9,233,700 (the "'700 Patent"). A copy of the '700 Patent is attached hereto as **Exhibit D**.

18. As a result of the Policy Warning, Amazon disabled Plaintiff's ASIN for its Amazon.com page for the Haoshi Cart.

19. As demonstrated herein, the assertion of patent infringement against Plaintiff was baseless and in bad faith as no reasonable litigant could conclude that the Haoshi Cart met every limitation of any claim of the '700 Patent.

20. Plaintiff submitted a response to Amazon's Seller Performance Team regarding the dispute, notifying Amazon that product does not infringe the '700 Patent.

21. On or about March 29, 2023, Amazon's Seller Performance Team responded stated that there was not enough information to re-enable Plaintiff's listing without a "Revocation request sent directly to Amazon by the rights owner" or "Court order."

22. Plaintiff and its agents proceeded to contact Defendants no less than six times between April 4, 2023, and May 10, 2023, seeking revocation of the infringement complaint against the Haoshi Cart. Plaintiff

23. On June 22, 2023, Counsel for Plaintiff sent a letter to Defendants and their attorney of record requesting that Dbest cease its frivolous patent allegations and take immediate action to reinstate Plaintiff's ASINs due to their meritless and frivolous accusations and actions. A copy of the letter is attached hereto as **Exhibit E**.

24. Counsel's letter to Defendants included a detailed breakdown of each limitation from the '700 Patent absent from the Haoshi Cart.

25. On June 30, 2023, a representative from Dbest responded to the letter by email, stating that Dbest "has reviewed the matter" and they "submitted your ASIN to be reinstated on Amazon."

26. However, despite the response from Dbest stating it would revoke the patent infringement allegation, the Haoshi Cart ASIN was not, and still has not, been reinstated.

27. Defendants have ignored multiple subsequent communications from Plaintiffs demanding that Defendants retract their baseless infringement claim against Plaintiff.

28. Plaintiff has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '700 Patent.

29. Defendants had and continue to have full knowledge of their error and have used the time for which Plaintiff's listing is enabled to their own benefit while continuing to hobble Plaintiff's ability to profit off its non-infringing product.

4

30. Defendants' continued failure to withdraw the patent infringement allegation from Amazon prevented Plaintiff from selling its Haoshi Cart during Prime Day, which included Amazon's single largest sales day in the company's history.

31. Defendants' actions crippled Plaintiff's business that Plaintiff is unable to sell its product via its selling platform. The removal of Plaintiff's Amazon sales page has created loss revenues in excess of $250,000 to date.

32. Additionally, as a result of Defendants' actions, Plaintiff has suffered actual losses for storage fees, warehouse fees, shipping costs and remedial actions due to the false patent infringement claim.

33. Plaintiff will require additional expenses in promotion and advertising to return Plaintiff to the same position before Defendants' unlawful action.

**The '700 Patent**

34. The '700 Patent was issued on January 12, 2016, with Defendant Richard Elden the sole-named inventor and applicant.

35. The '700 Patent was assigned from Defendant Richard Elden to Defendant Dbest, signed by Defendant Elden as president of Defendant Dbest, on January 12, 2016, by way of assignment recorded on April 12, 2021.

36. The '700 Patent has three independent claims, all of which are apparatus claims (claims 1, 3, 12).

37. The '700 Patent claims a two-wheeled flat-based foldable transport cart with a toe plate 80 and a foldable handle with an upper handle section 50 and a lower handle section 30, shown below in Fig. 1.

38. The upper handle section 50 can then be folded along the lower handle 30 about a set of pivots (150, 160), reducing the height of the handle as shown below in Fig. 5.

39. The claimed cart can then be further folded as shown in Fig. 7, so that the bottom front stand of the cart (bottom horizontal section 22) and the toe plate 80-fold into the folded handle sections 30 and 50, reducing the width of the cart in half.



## The Haoshi Cart

40. Conversely, the core structure of the Haoshi Cart is identical to a design that has been known in the US for over sixty years.

41. The Haoshi Cart contains a single handle (the diagonal structure shown on the left picture below) that is connected to the cart at points 7 and 8.

42. The Haoshi Cart can then be folded at points 7 and 8, which results in the collapsed configuration (the right picture below).




43. This basic structure of a folding cart was disclosed in US Patent No. 3,191,956 issued in 1965, which shows similar open (Fig. 1) and closed (Fig. 2) configurations of wheeled shopping cart or basket. The prior art shopping cart single handle can be folded along the pivot 84 to result in the flattened cart.



**Multiple Claim Limitations from the '700 Patent are Absent in the Haoshi Cart, Readily Demonstrating Non-Infringement**

44. Plaintiff demonstrates the following readily-identifiable absences in the Haoshi Cart from the claims in the '700 Patent.

*The Haoshi Cart lacks a handle with an "upper handle section" that "is rotatably connected to [a] lower handle section" required by every independent claim.*

45. Each of the independent claims of the '700 Patent require a handle that can be folded onto itself. A cursory inspection of the Haoshi Cart shows that this claim term is absent and therefore non-infringing.

46. In particular, the independent claims of the '700 Patent each require both "a first lower handle section" and "a second upper handle section."

47. Each of the independent claims further recite "the upper handle section is rotatably connected to the lower handle section by a left rotatable affixation member extending through aligned transverse openings in the lower left vertical leg member" (Claims 1(f); 3(f); 12(d)).

48. Then, using different language for each of the three independent claims, the independent claims require that "the upper handle section" can be rotated "relative to the lower handle section":

- the rotation of the upper handle section relative to the lower handle section is rotated so that the upper handle section is adjacent and above the lower handle section and in a folded condition (claim 1(f));
- in an erect condition, the upper handle section is rotated relative to the lower handle section so that the upper handle section is adjacent and above the lower handle section (claim 3(f)); and
- in an erect condition, the upper handle section is rotated relative to the lower handle section so that the upper handle section is aligned above the lower handle section (claim 12(d)).

49. The Haoshi Cart does not contain two "sections" of a handle whereby one handle section can be rotated relative to the other handle section.

50. Instead, the Haoshi Cart has a single, fixed handle that maintains the same shape regardless of the configuration of the cart—albeit in either the open or collapsed configurations.



51. The Haoshi Cart cannot infringe any independent (and therefore any) claim of the '700 Patent since the Haoshi Cart lacks any of the claimed limitations that require a folding handle.

***The Haoshi Cart lacks a "protective sheath" as required by independent claims 1 and 3.***

52. Independent claims 1 and 3 include the requirement that, in addition to the above recited "second upper handle section," "a first lower handle section which is formed in one piece as an elongated U-shaped member having a horizontal section . . . a protective sheath surrounding a portion of the horizontal section." (claim 1(b); claim 3(b)).

53. The absence of a "first lower handle section" makes it impossible for the Haoshi Cart to infringe this limitation. Moreover, there is no point on the Haoshi Cart below the topmost handle that has secondary layer on any structure.



54. The Haoshi Cart cannot infringe claims 1 and 3 as there is no "protective sheath" over some "lower" portion of the cart,

*The Haoshi Cart lacks a "second upper handle section" with a "right" and "left" "member adjacent its distal end is bent at an angle relative to the upper vertical right/left leg member" as required by independent claims 1 and 3.*

55. Independent claims 1 and 3 include the limitation reciting that the "second upper handle section" includes a "the upper vertical left leg member has a distal end, a section of the upper vertical left leg member adjacent **its distal end is bent at an angle relative to the upper vertical left leg member**" and "the upper vertical right leg member has a distal end, a section of the upper vertical right leg member adjacent **its distal end is bent at an angle relative to upper vertical right leg member**." In other words, the claims require that the bottom part of both sides of the "second upper handle section" are "bent" relative to the vertical portions of the handle section.

10



56. The Haoshi Cart lacks the claimed handle section. As stated above, the entirety of the bottom end of the long diagonal (indicated as 7 below) of the Haoshi Cart just terminates at the bottom of the cart. There is no bending of the handle except for the very top of the handle, which includes the black handle portion itself.

57. As the upright portions of the Haoshi Cart do not end in a "bent" or otherwise deformed configuration at the bottom of the cart, the Haoshi Cart cannot meet this requirement from independent claims 1 and 3.

***The Haoshi Cart lacks a "gripping member of the upper handle section" that can "rest against an interior wall of the toe plate section" as required by independent claim 12.***

58. Independent claim 12 requires that "the upper handle section is rotated relative to the lower handle section so that the handle section and the gripping member of the upper handle section rest against an interior wall of the toe plate section." Again, as discussed above, the inability of the handle of the Haoshi Cart to be folded means that the Haoshi Cart cannot meet this claim limitation either.

59. Additionally, claim 12 requires that, when folded, "the gripping member of the upper handle section rest against an interior wall of the toe plate section" (claim 12(h)). At no

point does any "gripping member" rest against the interior of the toe plate of the Haoshi Cart. As shown below, the grip of single-piece handle of the Haoshi Cart (number 13 below) does not rest against *any* other portion of the Haoshi Cart when folded. The grip of the Haoshi Cart remains above the entirety of the cart when in its collapsed configuration.



60. It is a physical impossibility for the Haoshi Cart to meet the limitation of a gripping member resting against the toe plate, and therefore does not infringe claim 12 for these additional reasons.

## COUNT I
### NON-INFRINGEMENT OF U.S. PATENT NO. 9,233,700

61. The allegations set forth above are restated and incorporated herein by reference.

62. As a result of the acts described herein, a substantial controversy of sufficient immediacy and reality exists to warrant the issuance of a declaratory judgment.

63. A judicial declaration is necessary and appropriate so that Plaintiff may ascertain its rights regarding its product.

64. Plaintiff is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '700 Patent.

65. Because of the intentional, malicious and fraudulent conduct as set forth herein, this is an exceptional case and Plaintiff is entitled to an award of reasonable attorneys' fees and treble lost profits pursuant to 35 U.S.C. § 284.

## COUNT II

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP OR BUSINESS EXPECTANCY

66. The allegations set forth above are restated and incorporated herein by reference.

67. Defendants intentionally made a complaint to Amazon asserting that Plaintiff was infringing its intellectual property, despite (1) failing to do its due diligence to determine whether the Haoshi cart infringed any of the claims of the '700 Patent, and (2) Plaintiff's Counsel alerting them to the improper allegations on multiple occasions.

68. Defendants made its knowingly false complaint of design patent infringement to Amazon knowing that the consequence would be that Amazon would remove Plaintiff's Amazon store front, precluding Plaintiff from selling any of its products – including the Haoshi cart – through Amazon.

69. Defendants did so knowing that Plaintiff's sales were conducted through Amazon and did so with the intent to divert Plaintiff's sales to itself.

70. Plaintiff had a valid contract and/or a business expectancy with Amazon, through which it expected to sell its products including the shopping cart described herein.

71. Defendants knew of Plaintiff's relationship with or business expectancy relating to Amazon.

72. By means of the fraudulent statements and/or material omissions set forth herein, Defendants intentionally interfered with Plaintiff's contract and/or business expectancy, inducing or causing Amazon to breach its contract and/or terminate its relationship or business expectancy with Plaintiff.

73. Plaintiff reasonably expected to realize more than $250,000 from the sale through Amazon of its shopping cart.

74. As a direct and proximate cause of Defendants' conduct as set forth herein, Plaintiff has been damaged in an amount to be proven at trial.

75. Defendant's conduct as set forth herein was fraudulent, intentional, and malicious, and as such Plaintiff is entitled to punitive damages and reasonable costs and attorneys' fees to the extent permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter, jointly and severally:

    a. A judgment in favor of Plaintiff that Defendants have not infringed, either literally and/or under the doctrine of equivalents, the '700 Patent;

    b. Award Plaintiff its actual damages and Defendants' profits from Defendants' wrongful acts;

    c. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285;

    d. Award Plaintiff its costs and reasonable attorneys' fees against Defendants;

    e. Award Plaintiff punitive damages, pursuant to California state law;

    f. Award Plaintiff pre- and post-judgment interest; and

    g. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

//
//
//

Dated this 8th day of September, 2023.

**INTELINK LAW GROUP, PC**

By: /Lisbeth B. Merrill/
Lisbeth B. Merrill, CB# 201822
**INTELINK LAW GROUP, PC**
23 Corporate Plaza Dr., Suite 150
Newport Beach, California 92660
Telephone: (949) 401-7220
Facsimile: (949) 800-6006
lmerrill@intelinklaw.com

Michael B. Marion (*pro hac vice forthcomming*)
**INTELINK LAW GROUP, PC**
2375 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016
Telephone: (866) 786-4036
mmarion@intelinklaw.com

*Attorneys for Plaintiff*